## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**05/25/2012**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 10-32302** |
| **WILSHIRE HOMES HOUSTON, LTD** | § | **CHAPTER 7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **W. STEVE SMITH** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 11-3297** |
| | § | |
| **JAMES EDWARD HORNE**, *et al* | § | |
| | § | |
| Defendant(s). | § | |

## REPORT AND RECOMMENDATION

W. Steve Smith, the chapter 7 Trustee for the estate of Wilshire Homes Houston, Ltd., has sued James Edward Horne; Brian Binash, East Belt, Ltd.; Wilshire Homes, L.P.; Binash Investment Limited Partnership; JEB Guarantee, LLC; and Jack Biegler for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, equitable subordination, usurpation of business opportunities, conversion of estate assets, violation of the Texas Theft Liability Act, and negligence.

The Debtor constructed and sold homes in the Houston, Texas area before filing for chapter 7 bankruptcy in 2010. The Trustee alleges that, before the bankruptcy filing, the Defendants conspired to deprive the Debtor of profits from the renegotiation of a construction loan. According to the Trustee, the Defendants negotiated the reduction of a debt secured by 36 lots and 18 partially completed homes ("Properties"). The Defendants allegedly transferred the

Properties to a special purpose entity called WICR Homes, LLC, and arranged for the debt to be acquired by an insider.

Biegler and JEB Guarantee, LLC (collectively, "Biegler Defendants") filed a motion for summary judgment as to all claims, arguing that the Trustee cannot produce evidence that the estate suffered any damages as a result of the Defendants' alleged actions. ECF No. 111.

Horne; WICR; East Belt, Ltd.; Wilshire Homes, L.P. ("WHLP"); Binash; and Binash Investment Limited Partnership ("BILP") (collectively, "Horne Defendants") also filed a motion for summary judgment on the basis of no evidence of damages. ECF No. 112.

The Court recommends that District Court grant the Horne Defendants' and the Biegler Defendants' motions for summary judgment. The Trustee has not provided sufficient evidence to support a finding that the estate suffered any damages as a result of the Defendants' alleged actions.

## Jurisdiction

The District Court has jurisdiction pursuant to 28 U.S.C. § 1334.

## Authority

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court may, however, exercise authority over essential bankruptcy matters under the public rights exception. Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge

that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363-64 (2006); *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 131 S.Ct. at 2614 ("We noted [in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 n.11 (1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

Many bankruptcy proceedings likely fall outside the public rights exception. The Supreme Court has held that a fraudulent conveyance suit, filed under § 548 of the Bankruptcy Code against a party that had not filed a claim against the estate, fell outside the public rights exception. *Granfinanciera*, 492 U.S. at 55-56. The public rights exception is likely even more limited when claims are asserted under non-bankruptcy law. After *Stern*, the Court's authority over state-law matters is particularly questionable.

This adversary proceeding does not fall within the Bankruptcy Court's constitutional authority. This proceeding is not integrally bound up in the bankruptcy process and cannot be resolved through the exercise of the Court's *in rem* jurisdiction over the bankruptcy estate. *See West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care—Katy, L.P.)*, 465 B.R. 452, 460 (Bankr. S.D. Tex. 2011) (determining constitutional authority by examining whether a matter can be resolved through the exercise of *in rem* jurisdiction or whether the substantive outcome of the issue is in any way affected by bankruptcy law).

The Trustee's claims are based entirely on state law, and the state-law character of the claims is in no way altered by bankruptcy law. Under *Stern*, the Trustee's claims fall outside the Bankruptcy Court's constitutional authority. *See Stern*, 131 S.Ct. at 2618 ("Congress may not

bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); *cf. Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993) (holding that, with respect to jury rights, a creditor's consent to a bankruptcy court's *in rem* jurisdiction transforms the character of the claim from legal to equitable, but that this transformation does not affect "disputes that are only incidentally related to the bankruptcy process").

Because the Court does not have authority to enter a final judgment, the Court recommends that the District Court grant summary judgment.

## Trustee's Allegations

The Trustee is suing the Defendants for allegedly conspiring to deprive the Debtor of an opportunity for profit. The Debtor was in the business of constructing and selling homes in the Houston, Texas area. ECF No. 102, at 6. On November 7, 2008, one of the Debtor's primary lenders, Franklin Bank, was placed in a Federal Deposit Insurance Corporation receivership. ECF No. 102, at 7. Franklin Bank held a construction loan ("Franklin Bank Note") secured by the Properties. ECF No. 102, at 8.

Horne and Binash, the two sole managers of Debtor's general partner, Houston WH GP, LLC, saw an opportunity to make a profit from Franklin Bank's FDIC receivership. ECF No. 102, at 7-8.

First, Horne and Binash caused the Debtor to transfer/sell the Properties to WICR, a special purpose entity owned and controlled by the Horne Defendants. ECF No. 102, at 7-8. Part of the purchase price for the Properties was WICR's assumption of three loans that Horne and Binash had previously made to the Debtor. ECF No. 102, at 8.

Second, Horne and Binash sought a reduction of the balance on the Franklin Bank Note. Because Franklin Bank was in an FDIC receivership, the Franklin Bank Note was put up for sale, but not to the public.  ECF No. 102, at 8.  Horne and Binash knew that the Franklin Bank Note could be sold at a significant discount.  ECF No. 102, at 9.

Horne and Binash worked with their close associate, Biegler, to arrange for the purchase of the Franklin Bank Note.  ECF No. 102, at 10.  Meanwhile, at the § 341 meeting of creditors in the Debtor's bankruptcy case, Horne and Binash told the Trustee that he had found a "guarantor with a bank who had nothing to do with Debtor", to finance the purchase of the loan from the FDIC.

Biegler formed JEB as a special purpose entity to purchase (or ostensibly purchase) the Franklin Bank Note from the FDIC.  ECF No. 102, at 10.  Biegler and JEB expected to make a $500,000.00 profit from the transaction.  ECF No. 102, at 10.  According to the FDIC, the loan was not initially sold to a third party but was compromised with the Debtor.  ECF No. 102, at 10.

An unrelated third party would have expected to collect the full face value of the Franklin Bank Note.  ECF No. 102, at 11.  At the time the WICR deal was transacted, the current balance on the Franklin Bank Note was $6,292,657.00.  Horne, Binash, and Biegler planned to write down or reduce the balance owed to $4,322,071.00 immediately following the closing of the sale.  ECF No. 102, at 11.  The value of the Properties, according to appraisals in June 2009, was $5,815,000.00.

The WICR transaction closed on July 24, 2009.  ECF No. 102, at 12.  When the transaction was completed, the principal balance on the reduced Note ("WICR Note"), purchased by JEB and Biegler, was $4,392,770.00.

The Defendants also worked to strip existing vendor liens from the Properties.  ECF No. 102, at 12.  Before the Properties were transferred to WICR, the Defendants told independent contractors that because of the Franklin Bank receivership, a "Go Forward" plan had been devised to save the Debtor.  The Defendants ultimately secured releases of liens on the Properties.  ECF No. 102, at 13.

After the WICR transaction was complete, Horne and Binash misrepresented that the Debtor was a viable entity.  Binash disclosed the purchase of the Franklin Bank Note in an email to several notable players in the Houston area building industry, but did not disclose that the purchase would benefit insiders.  ECF No. 102, at 14.  At the time Binash sent the email, the Debtor was already preparing for bankruptcy.  ECF No. 102, at 14.

Assuming these allegations to be true, the Trustee can claim damages only for any loss of profits suffered by the estate.  Misrepresentations to third parties might give rise to a cause of action by the third parties, but do not impose any liability to the estate.

### Procedural Background

Wilshire Homes Houston, Ltd. filed a voluntary chapter 7 petition on March 22, 2010.  Case No. 10-32302.  Smith was appointed chapter 7 Trustee.  Case No. 10-32302, ECF No. 12.

On June 13, 2011, the Trustee filed this adversary proceeding against the Horne Defendants and the Biegler Defendants.  ECF No. 1.  The Trustee filed the First Amended Complaint on September 6, 2011, and he filed the Second Amended Complaint on December 15, 2011.  The Trustee filed the Third Amended Complaint on March 7, 2012.  ECF No. 102.  The Trustee filed a motion for leave to file the Fourth Amended Complaint on April 4, 2012.  ECF No. 120.  The Court has not granted the motion to amend.

The Third Amended Complaint asserts the following claims:

- breach of fiduciary duty (Horne and Binash);

- aiding and abetting breach of fiduciary duty (Biegler, WICR, JEB, East Belt, BILP, and WHLP);

- equitable subordination (Horne, Binash, WHLP, and BILP);

- usurpation of business opportunities (Horne and Binash);

- conversion of estate assets (Horne, Binash, WICR, BILP, East Belt, and WHLP);

- violation of the Texas Theft Liability Act (Horne, Binash, WICR, BILP, East Belt, and WHLP); and

- negligence (Horne and Binash).

ECF No. 102.

The proposed Fourth Amended Complaint would amend the Trustee's claim for damages in light of the evidence discovered in responding to the Defendants' motions for summary judgment, adding a request for equitable fee disgorgement for any profits realized by Biegler and/or JEB as a result of Horne and Binash's breaches of fiduciary duty. ECF No. 120-1, at 17.

The Biegler Defendants filed their first motion for summary judgment on February 1, 2012. ECF No. 93. The Trustee filed a response on February 29, 2012, ECF No. 98, and the Biegler Defendants filed a reply on March 6, 2012, ECF No. 101. The Court held a hearing on the motion for summary judgment on March 8, 2012. At the hearing, the Biegler Defendants argued that the Trustee could not prove the estate had suffered any damages. Because the motion for summary judgment did not clearly articulate the no-evidence basis for summary judgment, the Court allowed the Biegler Defendants to file a new motion for summary judgment no later than March 22, 2012.

The Third Amended Complaint asserts that damages are "at a minimum, equal to the difference between the value of the properties at the time of the transfer from Debtor to WICR and the amount of the purchase price of the Franklin Bank loan[.]"  ECF No. 102, at 14.  The Court stated at the hearing, however, that damages would be measured by the amount of profit that had been diverted from the estate, based on a comparison of the investment in WICR with the proceeds WICR has received or is expected to receive.  ECF No. 112-1, at 14-15 & 27.

The difference between the estimated value of the Properties at the time of the transfer and the purchase price of the Franklin Bank Note is not an accurate measure of lost profits.  The WICR transaction required cash contributions from the Horne Defendants, and simply subtracting the amount owed on the Note from the estimated value of the Properties would not have produced an accurate estimate of profits even at the time of the transaction.  The Properties ultimately sold for less than their estimated values, and costs were greater than anticipated.  The question is not whether the Defendants expected a profit at the time of the transaction;[1] the question is whether the Debtor would *actually* have profited from retaining the Properties and benefiting from the reduction of the Franklin Bank Note.

The Biegler Defendants filed a no-evidence motion for summary judgment on March 22, 2012, arguing that the amount invested in WICR exceeded the anticipated proceeds and projecting that WICR would incur a loss of $330,294.00.  ECF No. 111.  The Horne Defendants also filed a no-evidence motion for summary judgment on March 22, 2012, similarly projecting that WICR would incur a loss of $320,651.64.  ECF No. 112.

---

[1] The Defendants' expected profits at the time of the transaction would have been relevant to a determination of the Defendants' state of mind.  But the Defendants' state of mind is not relevant to the limited question of whether the Trustee can prove actual damages.

The Trustee filed a response on April 5, 2012.  ECF No. 119.  The Trustee's response projects a profit of around $147,013.98.  The Trustee's estimates differ from the Defendants' in two major respects:  (i) the Trustee asserts that Horne and Binash's initial contribution was only $145,000.00, and the Defendants assert that it was $429,448.00; and (ii) the Trustee argues that $175,950.98, the amount of escrowed funds of the Debtor that were used at the closing of the WICR transaction, should offset WICR's reimbursement to Horne, Binash, and their affiliated entities.

The Biegler Defendants filed a reply on April 6, 2012.  ECF No. 122.  The Trustee filed a surreply on the same day.  ECF No. 123.  The Horne Defendants filed a response on April 10, 2012.  ECF No. 124.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v.*

*Garber*, 353 F.3d 393, 405 (5th Cir. 2003).   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara*, 353 F.3d at 403.  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

### Summary Judgment Evidence

The Biegler Defendants provide the following summary judgment evidence:

- Biegler's Ex. A, Affidavit of Jack Biegler, ECF No. 111-1;

- Biegler's Ex. B, Email from Deborah Weaver to Biegler regarding the value of certain lots, ECF No. 111-2;

- Biegler's Ex. C, Texas Real Estate Commission Resale Contract for the sale of 12114 Bayou Junction Road, ECF No. 111-3;

- Biegler's Ex. D, Letter from Amy Lippincott to Marvin Galloway regarding the listing price and quick sale price for 12114 Bayou Junction Road and email from Marvin Galloway to Biegler, ECF No. 111-4;

- Biegler's Ex. E, Lot Sale and Purchase Contract for Lots 1, 4, and 20 in Block 1, Section 5, Lakes of Bella Terra, Ford Bend County, Texas, ECF No. 111-5;

- Biegler's Ex. F, Summary Appraisal Report for 4 Single-Family Residential Lots, ECF No. 111-6; and

- Biegler's Ex. A-2, Oral Deposition of James Edward Horne, ECF No. 122-1.

The Horne Defendants provide the following summary judgment evidence:

- Horne's Ex. A, Transcript of Motion Hearing on March 8, 2012, ECF No. 112-1;

- Horne's Ex. B, Declaration of Horne, ECF No. 112-2; and

- Horne's Ex. A-2, Oral Deposition of Horne, ECF No. 124-1.

The Trustee provides the following summary judgment evidence:

- Affidavit of Jeffrey Boyd Lucas, ECF No. 119-1;

- Trustee's Ex. 1, Email from Ed Horne to Bill Liles regarding valuation of WICR collateral, ECF No. 119-2;

- Trustee's Ex. 2, Promissory Note from Horne to Antar & Co. for $650,000.00, ECF No. 119-3

- Trustee's Ex. 3, Oral Deposition of Horne, ECF No. 119-4;

- Trustee's Ex. 4, International Bank of Commerce Checking Account Statement for WICR, dated April 1, 2011 to April 30, 2011, ECF No. 119-5;

- Trustee's Ex. 5, HUD-1 Settlement Statement showing WICR as borrower and Debtor as seller, ECF No. 119-6;

- Trustee's Ex. 6, HUD-1 Settlement Statement showing JEB as borrower and FDIC as seller, ECF No. 119-7;

- Trustee's Ex. 7, HUD-1 Settlement Statement showing WICR as borrower and JEB as seller, ECF No. 119-8;

- Trustee's Ex. 8, HUD-1, Settlement Statement showing JEB as borrower and Texas Capital Bank, N.A. as seller, ECF No. 119-9;

- Trustee's Ex. 9, Stewart Title Escrow Accounting File Ledger, ECF No. 119-10;

- Trustee's Ex. 10, IBC Checking Account Statement for WICR, dated July 20, 2009 to July 31, 2009, ECF No. 119-11;

- Trustee's Ex. 11, Pro forma cost projections, purportedly produced by Biegler, ECF No. 119-12;

- Trustee's Ex. 12, Contract of Sale between Debtor and WICR, ECF No. 119-13;

- Trustee's Ex. 13, Debtor's Statement of Financial Affairs, ECF No. 119-14;

- Trustee's Ex. 14, Letter from counsel for Debtor and counsel for Chicago Title to Monroe Ashworth regarding the use of escrow funds of $175,950.98 and additional funds of $145,000.00 for the satisfaction of the Wisenbaker and Villareal liens, ECF No. 119-15;

- Trustee's Ex. 15, Oral Deposition of Mike Brown, ECF No. 119-16;

- Trustee's Ex. 16, HUD-1 Settlement Statement showing Boris Frankel and Julia Frankel as borrowers and WICR as seller, ECF No. 119-17;

- Trustee's Ex. 17, WICR Accrual Ledger for January 1, 2009 to December 31, 2009, with loans from WICR to Debtor and disbursements to partners highlighted, ECF No. 119-18;

- Trustee's Ex. 18, IBC Checking Account Statement for WICR, dated August 1, 2009 to August 31, 2009, ECF No. 119-19;

- Trustee's Ex. 19, Oral Deposition of Biegler, ECF No. 119-20;

- Trustee's Ex. 20, Marked email from Frank Brown to Gary Kolkhorst, Ed Horne, and Shelley Ledyard, dated June 25, 2009, ECF No. 119-21;

- Trustee's Ex. 21, Real Estate Lien Note, executed by WICR in favor of JEB, ECF No. 119-22;

- Trustee's Ex. 22, Invoice from JEB to WICR, dated September 1, 2009, ECF No. 119-23;

- Trustee's Ex. 23, Marked email from Frank Brown to Gary Kolkhorst, Ed Horne, and Shelley Ledyard, with diagrams depicting pending transaction between Debtor and WICR, dated June 25, 2009, ECF No. 119-24;

- Trustee's Ex. 24, Invoice from JEB to WICR, ECF No. 119-25;

- Trustee's Ex. 25-A, Chart showing interest charged by JEB to WICR in comparison to the maximum interest allowed by law, ECF No. 119-26;

- Trustee's Ex. 25-B, Completion Costs Summary, ECF No. 123-1;

- Trustee's Ex. 26, Pro forma projected home and lot sale prices, ECF Nos. 123-2 & 123-4;

- Trustee's Ex. 27, HUD-1 Closing Statements for WICR Properties, ECF Nos. 123-5 & 123-6; and

- Trustee's Ex. 28, Summary Chart, ECF No. 123-3.

### Analysis

The Court recommends that the District Court grant summary judgment in favor of the Defendants as to all claims. The Trustee cannot prove that the estate suffered any damages as a result of the WICR transaction.

Without proof of damages, the Trustee cannot prevail on any of his claims. Damages are a necessary element of a breach of fiduciary duty claim.[3] *Davis v. West*, 317 S.W.3d 301, 311 (Tex. App.—Houston [1st Dist.] 2009, reh'g overruled) (citing *Martin v. Estates of Russell Creek Homeowners Ass'n, Inc.*, 251 S.W.3d 899, 904 (Tex. App.—Dallas 2008, no pet.). Proof of actual harm is also essential to an equitable subordination claim. *See Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 523 F.3d 355, 361 (5th Cir. 2008) (noting that "equitable subordination is remedial, not penal, and in the absence of actual harm, equitable subordination

---

[3] It is also possible to recover for breach of fiduciary duty under an equitable disgorgement theory without proving actual damages. *Alpert v. Riley*, 274 S.W.3d 277, 295 (Tex. App.—Houston [1st Dist.] 2008). The Trustee's Third Amended Complaint does not seek equitable disgorgement. ECF No. 102, at 20. Although the breach of fiduciary duty cause of action asserts that Horne's and Binash's breaches "harmed Debtor and/or benefitted Horne and Binash," the Trustee is unable to prove either actual harm or benefit to the Horne Defendants. The Trustee does not provide sufficient evidence that the Debtor would have profited from the WICR transaction or that WICR (and its partners) will profit from the transaction. The Trustee's proposed Fourth Amended Complaint seeks to add an equitable disgorgement theory against the Biegler Defendants, but, as discussed below, the Court has not granted leave to amend.

is inappropriate") (citing *Benjamin v. Diamond (In re Mobile Steel Corp.)*, 563 F.2d 692, 706 (5th Cir. 1977)).

A plaintiff must prove damages before recovery is allowed for conversion. *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 889 (Tex. App.—Dallas 2009, no pet.). Additionally, courts have treated usurpation of business opportunities claims either as a type of breach of fiduciary duty claim or as analogous to a conversion claim. *See Lifshutz v. Lifshutz*, 199 S.W.3d 9, 19 (Tex. App.—San Antonio 2006, reh'g overruled) ("As a fiduciary, a partner is under the same obligation as a corporate fiduciary not to usurp corporate opportunities.") (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)); *Resolution Trust Corp. v. Holmes*, 1992 WL 533256, at *3 (S.D. Tex. 1992) (holding that a claim for usurpation of opportunities is "analogous to a claim for conversion" for statute of limitations purposes). Under either characterization, the Trustee cannot prevail without proving damages. *Cf. Wheeler v. Sajovich*, 2010 WL 2540689, at *6 (Tex. App.—Austin 2010, no pet.) (upholding no-evidence summary judgment on a usurpation of opportunities theory of breach of contract where the plaintiff could not prove that he would have made a profit on the investment).

Actual damages are essential to recovery under the Texas Theft Liability Act. Tex. Civ. Prac. & Rem. Code § 134.003(a) ("A person who commits theft is liable for the damages resulting from the theft."); § 134.005 ("[A] person who has sustained damages resulting from theft may recover . . . the amount of actual damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000[.]"); *see Alcatel, USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 674 (E.D. Tex. 2002) ("[A]n award of $1,000 statutory damages is contingent upon an award of actual damages.").

Finally, damages are an essential element of a negligence cause of action.  *Hudspeth v. Enterprise Life Ins. Co.*, 358 S.W.3d 373, 391 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("A negligence cause of action has three elements:  (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach.").

The appropriate measure of actual damages is the amount of the Debtor's profit if the benefits of the WICR transaction had remained with the estate—specifically, if the Debtor had retained the Properties and benefited from the reduction of the Franklin Bank Note.  *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) (noting that lost profit damages are recoverable both as contract and tort damages, including as actual damages for breach of fiduciary duty); *see also Wiese v. Pro Am Services, Inc.*, 317 S.W.3d 857, 862 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Damages [for conversion] are limited to the amount necessary to compensate the plaintiff for any actual losses suffered as a result of the conversion, and neither the plaintiff nor the wrongdoer should be unjustly enriched by the conversion.").

The parties' evidence focuses on WICR's expected profits from the transaction.  That determination is relevant primarily because the Court concludes, based on the summary judgment evidence provided by both the Trustee and the Defendants, that the Debtor's reduction of the Franklin Bank Note and ability to develop and sell the Properties would have paralleled that of WICR.  As a Texas court held in a breach of contract case involving similar allegations of usurped opportunities,

> Generally speaking, whether a plaintiff has incurred any lost profits is determined by subtracting a plaintiff's expenses from the gross profits the plaintiff would have earned under a contract had the defendant not breached.  While there was evidence that one or more appellees had made a profit on the purchase and subsequent resale of the . . . properties . . ., Wheeler did not present evidence

> from which a fact-finder could determine if *Wheeler* would have
> made any profits had he been able to purchase the . . . properties.

*Wheeler*, 2010 WL 2540689, at *6 (citation omitted).  In addition, however, the unprofitability of

the WICR transaction would also preclude any damages based on the alleged benefit to Horne

and Binash, an alternative measure of damages asserted in paragraph 50 of the complaint.  ECF

No. 102, at 15.

The Horne Defendants and the Biegler Defendants argue that WICR will not make any

profit from the transaction.  The estate therefore did not suffer any damages as a result of the

transaction.  The Trustee, on the other hand, argues that the expected profits from the transaction

are approximately $147,014.92 to $149,534.12.  The Trustee also points out that the Defendants

have not fully accounted for the loss of expected profits from the time the transaction was

executed.

Although the Horne Defendants' and Biegler Defendants' numbers differ slightly, they

agree that WICR's expected profit or loss can be determined by subtracting the amount of the

remaining debt on the WICR Note and the total reimbursed cash contributed by the Horne

Defendants from the value of the remaining collateral.

The Biegler Defendants provide the following estimate of WICR's expected loss:

**Forecast Sources of Funds**

| | | |
|---|---|---|
| Proceeds from Sold WICR Collateral Held in Escrow | $855,161 | |
| Sole Remaining Home to Be Sold Under Contract | $195,783 | |
| Approximate Net from Pending Lots | $144,683 | |
| Approximate Net from Unsold Lots | $157,920 | |
| Total Sources of Funds | | **$1,353,547** |

**Forecast Uses of Funds**

| | | | |
|---|---|---|---|
| Pay WICR Note Remaining Balance | | $1,026,779 | |
| Reimburse Cash Advances to Date | | | |
| Ed Horne CD | $250,000 | | |
| Initial Funds Contributed by Horne and Binash | $429,448 | | |
| Funds Advanced by Ed Horne after WICR Closing | $19,866 | | |
| Funds Advanced by Horne and Binash in 2011 | $7,748 | | |
| Offset One-Time Distribution to Horne and Binash | ($50,000) | | |
| Subtotal | | $657,062 | |
| Total Uses of Funds | | | **$1,683,841** |

**Expected Loss**  ($330,294)

ECF No. 111.  According to the Biegler Defendants, because WICR is expected to incur a loss of $330,294.00 from the transaction, the Debtors did not suffer any lost profits as a result of the transaction.

The Horne Defendants provide similar estimates:

**Sources of Funds**

| | | |
|---|---|---|
| Approximate net proceeds from sale of remaining assets | $500,906 | |
| Proceeds from Sold WICR Collateral Held in Escrow | $855,161 | |
|    Total Sources of Funds | | **$1,356,067** |

**Uses of Funds**

| | | | |
|---|---|---|---|
| Pay WICR Note Remaining Balance | | $1,017,657 | |
| Pay Operating Expenses | | $2,000 | |
| Reimburse Cash Advances to Date | | | |
|    Ed Horne CD | $250,000 | | |
|    Initial Funds Contributed by Horne and Binash | $429,448 | | |
|    Funds Advanced by Ed Horne after WICR Closing | $19,866 | | |
|    Funds Advanced by Horne and Binash in 2011 | $7,748 | | |
|    Offset One-Time Distribution to Horne and Binash | ($50,000) | | |
|      Subtotal | | $657,062 | |
|   Total Uses of Funds | | | **$1,676,719** |

| | |
|---|---|
| **Expected Loss** | **($320,652)** |

ECF No. 112-2, at 14.

The Horne Defendants report slightly different estimates of the value of the remaining collateral and the remaining debt on the WICR Note than the Biegler Defendants, but both estimate that WICR will incur a loss of over $320,000.00.

The Trustee argues that WICR will make a profit of between $147,014.92 and $149,534.92, depending on which estimate of the value of the remaining collateral is more accurate.[4]   The Trustee's estimate differs in two material respects from the Defendants' estimates.   First, the Trustee estimates that the initial funds contributed by Horne and Binash were significantly less than the Defendants' estimates—only $145,000.00.   The amount of

---

[4] The Trustee does not discuss the Defendants' differing reports of the amount of remaining debt on the WICR Note. If the Biegler Defendants' reported amount of $1,026,779.00 is correct, and if the Trustee's other amounts are correct, WICR's anticipated profits would be between $137,852.98 and $140,372.98.

money owed back to Horne, Binash, and their affiliated entities is therefore less, leaving more cash for WICR.

Second, the Trustee alleges that the Debtor contributed $175,950.98 to the WICR closing. These funds were held in escrow to pay off liens on the Properties.  The Trustee argues that the use of these escrowed funds to pay off the liens lowered Horne and Binash's initial contribution. Accordingly, the Trustee says, the $175,950.98 should offset the funds that are owed back to Horne and Binash.

The Trustee's estimates are as follows:

**Sources of Funds**

| | | |
|---|---|---|
| Proceeds from Sold WICR Collateral Held in Escrow | $855,161 | |
| Sole Remaining Home to Be Sold Under Contract | $195,783 | |
| Approximate Net from Pending Lots | $144,683 | |
| Approximate Net from Unsold Lots | $157,920 | |
| Total Sources of Funds | | **$1,353,547** |

**Uses of Funds**

| | | |
|---|---|---|
| Pay WICR Note Remaining Balance | $1,017,618 | |
| Reimburse Cash Advances to Date | | |
| Ed Horne CD | $250,000 | |
| Initial Funds Contributed by Horne and Binash | $145,000 | |
| Funds Advanced by Ed Horne after WICR Closing | $19,866 | |
| Offset One-Time Distribution to Horne and Binash | ($50,000) | |
| Offset Debtor's Funds Used at Closing | ($175,951) | |
| Subtotal | $188,915 | |
| Total Uses of Funds | | **$1,206,533** |

**Expected Profit**                                                     **$147,014**

The Court has highlighted the Trustee's two major points of dispute with the Defendants.

The Court need not reach the issue of whether the initial funds contributed by Horne and Binash were $145,000.00, as the Trustee asserts, or $429,448.00, as the Defendants assert.  Even if the Court assumes that Horne and Binash contributed only $145,000.00, the Trustee's numbers do not, when properly analyzed, reflect an expected profit.  The Trustee incorrectly offsets the

$175,950.98 against the amounts due to Horne, Binash, and affiliated entities.   When the $175,950.98 is not counted as an offset, the alleged expected profit disappears.

The $175,950.98 was held in escrow by Chicago Title from previous sales of properties owned by the Debtor.  The Trustee provides evidence that the funds were wired to Stewart Title on July 24, 2009 and used, along with $145,000.00 from Horne and Binash, to pay off the liens of Wisenbaker Building Services, Inc.; Villareal Drywall, Inc.; and Royal Villa Construction, Inc.  Trustee's Ex. 14; ECF No. 119-15.  The liens were on the Properties.

If the $175,950.98 was used to pay off the liens, that amount should not offset the amount advanced by Horne, Binash, and their affiliated entities.  The Trustee correctly points out that the Defendants would have had to provide a larger initial investment if not for the contribution of the $175,950.98.  The Trustee is incorrect, however, in arguing that this amount should be subtracted from the investment the Defendants did make.  If the Defendants had provided the $175,950.98, that amount would now be part of their contribution *in addition to* the amount they actually contributed; the $147,013.98 profit projected by the Trustee would disappear.

More importantly, the correct point of reference is *not* what would have happened to WICR, Horne, Binash, or the other Defendants if the Debtor had not contributed the $175,950.98.  The appropriate measure of damages is the profit the Debtor would have realized if not for the Defendants' alleged breach of fiduciary duty, conversion, usurpation, or negligence—that is, if the Debtor had retained the properties and the Franklin Bank Note had been renegotiated on behalf of the Debtor.  Under this scenario, the Debtor would have retained the $175,950.98, but the cash would still have been used to pay off the liens.  The Court assumes—as the Trustee's and the Defendants' models implicitly assume—that the sales price of

the properties and the reduction of the Franklin Bank Note would have been the same if the Debtor had retained the project.

If the Debtor had retained the project, its profits, using the Trustee's estimates of the value of the collateral and the remaining debt on the Note, would have been as follows (for explanatory purposes, it is assumed that the Chicago Title escrow fund and the liens that it was intended to defease remain outstanding):

| Trustee's Projections for WICR | | | As Modified by Court | | |
|---|---|---|---|---|---|
| **Sources of Funds** | | | **Sources of Funds** | | |
| Proceeds from Sold WICR Collateral Held in Escrow | | $855,161 | Proceeds from Sold WICR Collateral Held in Escrow | | $855,161 |
| Sole Remaining Home to Be Sold Under Contract | | $195,783 | Sole Remaining Home to Be Sold Under Contract | | $195,783 |
| Approximate Net from Pending Lots | | $144,683 | Approximate Net from Pending Lots | | $144,683 |
| Approximate Net from Unsold Lots | | $157,920 | Approximate Net from Unsold Lots | | $157,920 |
| | | | Cash from Chicago Title Escrow | | $175,951 |
| Total Sources of Funds | | **$1,353,547** | Total Sources of Funds | | **$1,529,498** |
| **Uses of Funds** | | | **Uses of Funds** | | |
| Pay WICR Note Remaining Balance | | $1,017,618 | Pay Franklin Bank Note Reduced Balance. | | $1,017,618 |
| Reimburse Cash Advances to Date | | | Cash Loss to Date: | | |
| Ed Horne CD | $250,000 | | Expenses paid with Ed Horne CD | $250,000 | |
| Initial Funds Contributed by Horne and Binash | $145,000 | | Payment of M&M Liens with funds from Horne and Binash | $145,000 | |
| Funds Advanced by Ed Horne after WICR Closing | $19,866 | | Expenses paid with post-closing Horne advance | $19,866 | |
| Offset One-Time Distribution to Horne and Binash | ($50,000) | | Offset One-Time Distribution to Horne and Binash | ($50,000) | |
| Subtotal | | $364,866 | Subtotal | | $364,866 |
| Offset Debtor's Funds Used at Closing | | ($175,951) | Pay Outstanding M&M Liens | | $175,951 |
| Total Uses of Funds | | **$1,206,533** | Total Uses of Funds | | **$1,558,435** |
| **Expected Profit** | | **$147,014** | **Expected Loss** | | **($28,937)** |

22 / 24

As the Court's chart shows, if the Debtor had contributed, in addition to the Chicago Title escrow funds, the same amount of cash that the Defendants contributed to the WICR closing, and if the remaining debt on the Franklin Bank Note were the same as what is now owed on the WICR Note, the project would produce a net loss to the Debtor of $28,937.00.

In his surreply, the Trustee argues that the Defendants expected to make a $2,000,000.00 profit on the WICR transaction and that the Defendants have accounted for only $909,096.00 of the shortfall:   the cost overruns for completion and the amounts by which the properties undersold their projections.  ECF No. 123, at 2-3.  Such speculation is insufficient to establish the Trustee's entitlement to damages.  The Trustee's initial response to the motions for summary judgment concedes that a comparison of inputs to expected outputs is the appropriate measure of damages.

The Trustee also seeks, in his motion to file the Fourth Amended Complaint, to add an equitable disgorgement theory of damages to his aiding and abetting breach of fiduciary duty claim against Biegler and JEB.  The Court has not granted leave to amend the complaint, and the Court does not consider whether the Trustee could have recovered under an equitable disgorgement theory.

Interpreting the facts in the light most favorable to the Trustee, the Court concludes that there is no evidence that the Debtor would have realized a profit by retaining the properties and renegotiating the Note.  Therefore, there is no evidence that the Defendants' transfer of the properties and renegotiation of the Note harmed the Debtor.

The Trustee's inability to prove any damages in connection with the WICR transaction defeats his claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, equitable subordination, usurpation of business opportunities, conversion of estate assets,

violation of the Texas Theft Liability Act, and negligence, all of which depend on the allegation that the Debtor was harmed by the WICR transaction.  The Trustee cannot prove that the Debtor was harmed by the WICR transaction, and therefore he cannot prevail on any of these claims.

### Recommendation

The Court recommends that the District Court grant summary judgment in favor of the Defendants as to all claims.

SIGNED **May 25, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE